UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 25, 2011
```

:

AMERICAN ACADEMY OF RELIGION, et al.,    :

:                                        06 Civ. 588 (PAC)

          - against -                    :

:                                        OPINION & ORDER

NAPOLITANO, et al.,                      :

:

                         Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HONORABLE PAUL A. CROTTY, United States District Judge:

The American Academy of Religion, American Association of University Professors, Pen American Center, and Tariq Ramadan (collectively, "Plaintiffs"), move for attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, owed to counsel, the American Civil Liberties Union ("ACLU"). After negotiating in good faith, the parties were unable to reach an agreement on attorney fees. Plaintiffs submit that, in an effort to reduce the burden on the Court's limited resources, they have submitted a reasonable fee request by (1) diligently reviewing their time sheets for accuracy; (2) excluding time worked by all staff other than the four principal attorneys; (3) excluding all expenses and costs, to which they are entitled; and (4) billing only for time spent on the initial phase of the litigation, that is, pre-litigation research, the complaint, and the preliminary injunction motion decided on June 23, 2006. See Am. Acad. of Religion v. Chertoff, 463 F. Supp. 2d 400 (S.D.N.Y. 2006); (Mot. in Supp. 2). Plaintiffs request $392,103.75 for time spent by the four principal attorneys on the initial phase of the case. Plaintiffs assert that they totaled thousands of hours of work but request compensation for only 859.8 hours.

The Government opposes this request, arguing that the Plaintiffs were not "prevailing parties" entitled to relief; that the Government's position was sufficiently justified; that

Plaintiffs' request exceeds the scope of the claims on which they were successful; and that Plaintiffs are not entitled to market rate compensation.

Plaintiffs' application is denied.  They were not prevailing parties within the meaning of the controlling statute.  The Court did direct the Government to reach a decision on Professor Ramadan's visa application; but that was not the relief sought in bringing the litigation.  The Order was merely one step, and a preliminary one, in a process to put the issue in position for an appropriate decision.  It was not part of the relief requested.  Additionally, the Government's position was substantially justified.

**I. Background**

The facts were fully set forth in the Court's Opinions of June 23, 2006 and December 20, 2007 opinion.  See Am. Acad. of Religion v. Chertoff, No. 06 CV 588 (PAC), 463 F. Supp. 2d 400 (S.D.N.Y. 2006) and 2007 U.S. Dist. LEXIS 93424 (S.D.N.Y. Dec. 20, 2007).  They are briefly summarized here and supplemented by the pertinent facts that have since occurred.

Tariq Ramadan, a distinguished and respected Muslim scholar, accepted a position as a tenured professor at the University of Notre Dame ("Notre Dame") in January 2004.  Upon Ramadan's acceptance, Notre Dame submitted a temporary work visa petition on his behalf, which was initially approved by the United States Department of State ("State Department") on May 5, 2004.  Shortly before Professor Ramadan's scheduled move, however, his visa was revoked without explanation.  A spokesman for the Immigration and Customs Enforcement Division of the Department of Homeland Security ("DHS") stated to the media that the basis of the revocation was the Patriot Act's provision permitting the United States to exclude any person who used a "position of prominence within any country to endorse or espouse terrorist activity." Muslim Scheduled to Teach at Notre Dame Has Visa Revoked, L.A. Times, Aug. 25, 2004, at

A23.  Unable to acquire a visa in time for the academic year, Professor Ramadan was forced to resign his teaching position at Notre Dame on December 13, 2004.

On September 16, 2005, Ramadan applied for a nonimmigrant visa which would allow him to enter the United States for short periods of time to attend academic events.  As part of his application, Ramadan appeared for two interviews, during which he revealed that between 1998 and 2002 he made donations totaling 1,670 Swiss francs (approximately $1,336 dollars) to the Association de Secours Palestinien ("ASP"), which the U.S. Department of the Treasury listed as an entity that supports terrorism by providing funding to Hamas and a "Specially Designated Global Terrorist."

No decision was made on the nonimmigrant visa application, and on January 25, 2006, Plaintiffs filed this lawsuit challenging Professor Ramadan's ongoing exclusion from the United States.  Almost two months later, with still no decision on the pending application, Plaintiffs filed a motion for a preliminary injunction.  The Court rejected the Government's arguments that the plaintiffs lacked standing and that the doctrine of consular non-reviewability barred judicial review, and on June 23, 2006 ordered the Government to decide the pending visa application, one way or the other, within ninety days.  Am. Acad. of Religion, 463 F. Supp. 2d 400.  On September 19, 2006, the Government officially denied the visa because Professor Ramadan had contributed money to an organization that provided material support to a terrorist organization.

On February 2, 2007, Plaintiffs amended their complaint to challenge the denial of Ramadan's visa on the grounds that the Government's proffered reason for denying the visa was not facially legitimate and bona fide, and to assert a claim that the "endorse or espouse" provision of the Patriot Act was unconstitutional under the First and Fifth Amendments.  The Court granted Defendants' motion for summary judgment.  The Government provided a facially

legitimate and bona fide reason for Professor Ramadan's exclusion, and the Court lacked
authority to override the decision.  The admissibility of aliens is a political question with limited
judicial reviewability.  Am. Acad. of Religion, 2007 U.S. Dist. LEXIS 93424, at *50.

On appeal, the Second Circuit vacated and remanded, finding it unclear whether the
government had advised Professor Ramadan that ASP provided material support to a terrorist
organization and allowed him an opportunity to demonstrate that he did not know.  See Am.
Acad. of Religion v. Napolitano, 573 F.3d 115 (2d Cir. 2009).  On remand, the parties stipulated
that the Government would "consider the exercise of discretionary authority relative to the facts
underlying the 2006 denial of Ramadan's visa."  Professor Ramadan was subsequently granted a
10-year multiple entry visa and the case was dismissed.  (Jaffer Decl. ¶ 10 Ex. C).

Plaintiffs filed their first motion for attorney fees and expenses on April 12, 2010,
claiming compensation for all aspects of the litigation.  This motion was stayed pending
settlement negotiations, but the parties were unable to reach an agreement.  Subsequently,
Plaintiffs filed their Amended Motion, withdrawing claims for all expenses and for fees that
post-date the preliminary injunction order.

**II. Analysis**

Under the EAJA, a prevailing party is entitled to attorney fees and expenses in a civil
action against the United States or one of its officials, unless the Government can establish that
"the position of the United States was substantially justified or that special circumstances make
an award unjust."  28 U.S.C. § 2412(d)(1)(A).[1]  The party must submit an itemized statements of
the fees and expenses it seeks to recover, and meet the financial requirements set forth in §
2412(d)(2)(B), as well as the 30-day deadline under § 2412(d)(1)(B).

---

[1] The Government has not argued that special circumstances make an award of fees unjust.

Plaintiffs argue that (1) they were a prevailing party under the EAJA; (2) neither the government's pre-litigation conduct nor the legal positions it took during the initial phase of litigation were substantially justified; (3) they meet the EAJA's financial requirements; and, finally (4) their request is reasonable.  Defendants respond that (1) Plaintiffs were not a prevailing party under the EAJA; (2) the rulings demonstrate that the Government's prelitigation and litigation positions were substantially justified; (3) there is no connection between the time Plaintiffs spent on the matter and their limited success; and (4) the hourly rates requested are excessive.  (Mem. in Opp. 1).

## A.  Prevailing Parties

A party prevails whenever there has been a "material alteration of the legal relationship of the parties," "on any significant issue in litigation which achieve[d] some of the benefit the part[y] sought in bringing suit."  <u>TX State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 791, 792-793 (1989) (internal quotations omitted).  A preliminary injunction may be sufficient to confer prevailing party status.  <u>See, e.g.</u>, <u>Haley v. Pataki</u>, 106 F.3d 478 (2d Cir. 1997).

Plaintiffs argue that they prevailed in this case by securing the following favorable rulings in the June 23, 2006 Order: (1) that the Plaintiffs had standing, <u>Am. Acad. of Religion</u>, 463 F. Supp. 2d at 411-12; (2) that the Court had jurisdiction to hear Plaintiffs' First Amendment challenge, <u>id.</u> at 412-13; (3) that the case was ripe for adjudication, <u>id.</u> 414; (4) that the doctrine of consular nonreviewability did not bar judicial review, <u>id.</u> 417; (5) that the Government was required to give a facially legitimate and bona fide reason for excluding Professor Ramadan, <u>id.</u> 418-19; and (6) that the Government's delay in processing the visa application was unreasonable. <u>Id.</u>

The June 23, 2006 decision did not alter the parties' legal relationship in any material way; it did not achieve any of the relief sought in the complaint.  While requiring the Government to reach a decision, one way or another, on the visa application was one of four grounds listed on the motion for preliminary injunction, a decision on the visa was not part of the relief requested in the complaint.  In many ways, the Court's decision on the visa application was little more than a precursor to the decision on the merits (not unlike surviving a motion to dismiss).  Having a determination on the application was not, as argued now, the motivation for bringing this suit.  Rather, plaintiffs challenged the constitutionality of the ideological exclusion provision which they allege barred Professor Ramadan's admission to this country.  There was never a decision on the ideological exclusion, however; and while Professor Ramadan was eventually granted a visa, it was not due to any Court Order.

To be a "prevailing party," a party must secure a judgment on the merits.  That was not achieved here.  Professor Ramadan's entry did not occur due to the lawsuit but rather a voluntary change in the defendant's position, unrelated to litigation.  Buckhannon Bd. & Case Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 601, 605; Doherty v. Thompson, No. 09-2285-cv, 2011 WL 601599, at *1 (2d Cir. Feb. 22, 2011) (a change in position of immigration authorities allowing plaintiff to be naturalized, even in context of petition for mandamus to compel that result, does not amount to "prevailing"); Ma v. Chertoff, 547 F.3d 342, 344 (2d Cir. 2008) (applying Buckhannon to a case brought under the EAJA).  While the State Department ultimately changed its position and granted Professor Ramadan a visa, this decision was not caused by any Court Order and certainly not by the June 23, 2006 Order.  Rather, it was achieved because of the exercise of the Secretary of State's discretionary authority.  (See Mem. in Opp. 3

6

(arguing that the decision to issue a visa to Professor Ramadan was precipitated by the change in administration)).

Plaintiffs' cases demonstrate the importance of examining the objectives of litigation, as of the filing of the complaint, in determining prevailing party status.  In <u>Preservation Coalition of Erie County v. Federal Transit Administration</u>, for example, the Court held that the plaintiffs were entitled to fees incurred in obtaining a court-ordered Supplemental Environmental Impact Statement.  356 F.3d 444, 452 (2d Cir. 2004).  Significantly, the inadequacy of the Final Environmental Impact Statement in that case was "[o]ne of [the plaintiffs'] principal claims."  <u>Id.</u> at 448 (citing the complaint).  In addition, under the National Environmental Policy Act, environmental impact statements are substantively, not simply procedurally, valuable.  <u>See</u> <u>id.</u> at 453-55.  Similarly, in <u>Watson v. County of Riverside</u>, a county employee succeeded in having a report, which he was ordered to make without consulting an attorney, excluded from use at the administrative proceedings concerning his termination.  300 F.3d 1092 (9th Cir. 2002). Although the employee's termination ultimately was upheld, the alleged constitutional violation caused by the use of the report permeated the complaint and was the impetus for bringing the case.  <u>See</u> <u>id.</u> at 1094; <u>see also</u> <u>Role Models Am., Inc. v. Brownlee</u>, 353 F.3d 962, 965 (D.C. Cir. 2004) (holding that the plaintiff was a prevailing party where the relief secured—a declaration that the failure to provide adequate notice was unlawful—was specifically requested in the underlying complaint).  To put it simply, the plaintiffs in these cases achieved their goals; they were accorded the relief they sought in their complaints.  But that did not happen here.  Instead, we have an after the fact recasting of the objectives of litigation.  Plaintiffs sought a declaration that the endorse or espouse provision was unconstitutional and Professor Ramadan's admission to the United States.  There was never a ruling on the endorse or espouse language and while

Professor Ramadan gained a visa, it was not due to a Court Order.  Accordingly, the Plaintiffs cannot be said to be the prevailing party.

### B.  Substantially Justified

Even if Plaintiffs were prevailing parties, their request for attorney fees would fail because the Government's position was substantially justified.  "[T]he government bears the burden of showing that its position was substantially justified, and to meet that burden, it must make a strong showing that its action was justified to a degree that could satisfy a reasonable person."  Healey v. Leavitt, 485 F.3d 63, 67 (2d Cir. 2007) (internal quotations omitted).  The Court must consider both the prelitigation conduct and the litigation position.  See id.

Plaintiffs argue that "[b]oth 'the position taken by the United States in the civil action' and 'the action or failure to act by the agency upon which the civil action is based' were unreasonable and unjustified."  (Mem. in Supp. 11 (quoting 28 U.S.C. § 2412(d)(2)(D))).  They contend that "[t]hroughout this litigation, but particularly in its early stages, the government took positions that were wholly unsupported by the factual record and plainly inconsistent with the law," specifically the reliance on the endorse or espouse provision and the refusal to adjudicate the application.  Defendants respond that their position was justified because (1) they never formally relied on the endorse or espouse provision; (2) the "alleged out-of-court statement" by the DHS spokesperson does not constitute a pre-litigation position for these purposes; and (3) the judicial enforceability of visa-processing regulations was unsettled in light of the doctrine of consular nonreviewability.  (Mem. in Opp 11-13).

The Government's conduct subsequent to the commencement of litigation was substantially justified.  Rather than the Plaintiffs prevailing, it is fair to say that the Government prevailed.  It was never determined that Professor Ramadan's admission was constitutionally

8

mandated, as plaintiffs maintained.  Neither of the District Court opinions nor the Circuit Court opinion required that result.  There is merit, however, in the Plaintiffs' argument that "it should not have taken four years of litigation—encompassing two decisions from this Court as well as a decision from the Second Circuit—to achieve this constitutionally required result."  (Mem. in Supp. 1).  Of course, this overstates the claim.  The result was not "constitutionally required." The whole saga may have taken four years, but the conduct at issue did not start until September 26, 2005; and it concluded within one year.  While the government consular activity may have been dilatory, it may also have been attributable to an overworked, underbudgeted, and understaffed bureaucratic agency, which lacked the resources to effectively perform its assignments within an appropriate timeframe.

The issues raised are difficult ones at the intersection of consular nonreviewability, on one hand, and the First Amendment and Administrative Procedure Act, on the other.  The difficulty of these issues is implicitly recognized in Plaintiffs' argument that only a few attorneys with specialized skill could handle the intricacies presented by this case, entitling them to compensation at the market rate rather than the statutory rate.  At oral argument, Plaintiffs urged that "[t]his is not a mundane, ordinary case.  It involved very serious constitutional claims that had to be examined in great detail."  (Tr. 14:20-14:22, Feb. 14, 2011).  Indeed, the "difficulty of these issues" indicates that there was more than one legitimate interpretation of the law, requiring extensive consideration by two Courts.  At the time of litigation, the Government's position had support in the law.  See, e.g., Kent v. United States, 8 F.3d 27 (9th Cir. 1993). Plaintiffs have not cited any authority foreclosing it.  As a result, the Government has met its burden of showing that its litigation position was substantially justified.

If this position is justified after the lawyers—excellent, competent, and highly professional—have had to work so hard, honing and clarifying issues, researching the law, and arguing on the merits, it is easy to posit the reasonableness of the agencies' prelitigation conduct. If unclear for the lawyers, how much less clear must it be for those who are not trained in the law?  The prelitigation conduct of the agencies involved—DHS and the State Department—was not inconsistent with the position taken in Court.

### Conclusion

Because the Plaintiffs were not prevailing parties and the Government's position was substantially justified, the amended motion for attorney fees is denied.  The Clerk of Court is directed to terminate the motion at Docket #60.


Dated:  New York, New York
        March 25, 2011

SO ORDERED

PAUL A. CROTTY
United States District Judge